*578 TEXTO COMPLETO DE LA SENTENCIA
Ante nos Néstor Ramos Zavala, Gladys Méndez Mojica y la sociedad legal de gananciales por ambos constituida; y Felicita Mojica Rosa por sí la Sociedad (en adelante, “Ramos Zavala” o apelante) interesan la revocación de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, “777”) de 8 de septiembre de 2004. En dicha sentencia, el TPI desestimó la acción sobre daños y peijuicios instada por los apelantes contra la parte apelada al concluir que las actuaciones del Estado Libre Asociado estuvieron enmarcadas dentro de los parámetros legales y reglamentarios aplicables.
Examinado el expediente ante nuestra consideración, así como el derecho aplicable, confirmamos la sentencia apelada.
I
Los eventos pertinentes para atender estos planteamientos surgen de los hechos hilvanados y expuestos por el foro apelado, según contenidos en la sentencia que nos ocupa, los cuales reproducimos a continuación.
El señor Néstor Ramos Zavala comenzó en el servicio público el 22 de abril de 1987, en el puesto transitorio de Asistente de Técnico de Emergencias Médicas, adscrito a la Secretaría Auxiliar de Emergencias Médicas del Departamento de Salud, específicamente a la Administración de Facilidades de Servicios de Salud, conocido también como A.F.A.S.S.
El 16 de junio de 1988, después de varias extensiones otorgadas a Ramos Zavala en el puesto transitorio que ocupaba, fue nombrado de manera también transitoria al puesto de Técnico de Emergencias Médicas.
En el 1989, Ramos Zavala adquirió el status de empleado regular, clasificado de carrera, por disposición de la propia Ley Núm. 56 del 16 de agosto de 1989, según enmendada, disposición reguladora del otorgamiento de permanencia a empleados con nombramiento transitorio que cumplieran con ciertos requisitos a determinada fecha.
Efectivo el 1ro de julio de 1994, de conformidad con el Plan de Reorganización Núm. 1, al amparo de la Ley Núm. 5 de 6 de abril de 1993, 3 L.P.R.A. see. 1551, el Cuerpo de Emergencias Médicas pasó a formar parte del Cuerpo de Bomberos de Puerto Rico. De esa manera, quedaron trasladados a dicho Cuerpo los funcionarios que laboraban en la Secretaria Auxiliar de Emergencias Médicas del Departamento de Salud.
Mediante la Ley Núm. 114 de 6 de septiembre de 1997, se creó, como Administrador Individual, el Cuerpo de Emergencias Médicas, la cual entró en vigor el 1ro de julio de 1997.
Entre el 1989 y 1995, el señor Ramos llevó a cabo sus funciones sin tener desavenencias o “problemas” con sus supervisores. En el 1995, Ramos Zavala decidió cursar estudios de Bachillerato en la Universidad del Turabo.
Con fecha anterior al 8 de mayo de 1996, el apelante fue diagnosticado con “Depresión Mayor Severa”, recomendándosele reposo laboral. Sin embargo, el 8 de mayo de 1996, Ramos Zavala fue reevaluado por la Dra. Margarita Vargas del Interamerican Psychiatric Group, cuyo resultado fue una determinación favorable para poder regresar a su trabajo.
El 11 de septiembre de 2001, el Dr. José Rodríguez Cay evaluó y diagnosticó al apelante como paciente con *579 “Desorden Bipolar Mixto” (depresión y manía), catalogando su condición como “crónica” y sufrida desde la década de los ’90. El Dr. Rodríguez Cay manifestó que Ramos Zavala padecía de conducta errática y autodestructiva en distintas facetas de su vida. El galeno manifestó, además, que la condición del apelante no le permitía “funcionar” en el área laboral, ni social. Por tal razón, según el Dr. Rodríguez Cay, Ramos Zavala no podía desempeñarse como paramédico, al menos desde el 11 de septiembre de 2001.
La trayectoria laboral de la parte apelante en el servicio público pareció reflejar que éste había tenido varias situaciones críticas de índole laboral. Las mismas tuvieron el efecto de ocasionar investigaciones administrativas, algunas de ellas concluyendo en la imposición de sanciones disciplinarias al apelante por alegadamente haber infringido las normas de ley y reglamentarias que rigen el Cuerpo de Emergencias Médicas.
Entre las situaciones laborales que acarrearon la imposición de sanción disciplinaria al apelante se encuentran varias amonestaciones escritas, por situaciones referentes a un problema de tardanzas y de incorrecciones en e] Registro de Horas de Entrada y Salidas y de suspensiones de empleo y sueldo parciales, por haber infringido la reglamentación del Cuerpo de Emergencias Médicas.
Las acciones de investigación y de sanciones disciplinarias relacionadas a Ramos Zavala fueron efectuadas al tenor de la Ley 5 del 14 de octubre de 1975, conocida ésta como la “Ley de Personal del Servicio Público”, 3 L.P.R.A. see. 1301 y ss, con su Reglamento, el Reglamento de Normas y Procedimientos sobre Medidas Correctivas del Servicio de Carrera y de Rango del Cuerpo de Bomberos de Puerto Rico y el Reglamento de Normas y Procedimientos sobre Medidas Correctivas del Servicio de Carrera y de Confianza del Cuerpo de Emergencias Médicas.
El 16 de noviembre 1999, le fue otorgado un ascenso a la parte apelante de Técnico de Emergencias Médicas I a Técnico de Emergencias Médicas II, mediante el proceso de reclasificación por evolución del puesto, según lo dispone la Ley de Personal del Servicio Público, supra, y el Reglamento de Personal del Cuerpo de Emergencias Médicas, Además, se le concedió una bonificación salarial, adicional a su salario, de $100 y un diferencial de $167.00.
La parte apelante, en toda su trayectoria laboral, hasta el 15 de noviembre de 1999, nunca solicitó se le otorgara un ascenso, así como tampoco recibió ninguna recomendación de ascenso de los supervisores inmediatos de dicha parte, según lo disponen las normas establecidas por el Cuerpo de Emergencias Médicas para los ascensos sin oposición.
De las investigaciones efectuadas por la agencia, relacionadas a la parte apelante, sólo tres produjeron sanciones disciplinarias.
La suspensión de empleo mediante carta de 9 de diciembre de 1997, suscrita por el Director Ejecutivo del Cuerpo de Emergencias Médicas, y enviada al apelante, respondió al incumplimiento por parte del señor Ramos Zavala de distintas normas administrativas dispuestas en el Reglamento de la agencia: tardanzas habituales, registro de entrada y salida cumplimentado incorrectamente, conducta desordenada, negligencia o descuido de la ejecución de tareas, deberes y obligaciones y conducta impropia. Ramos Zavala fue notificado por escrito de la razón para la suspensión y de su derecho a solicitar la correspondiente vista administrativa. Esta investigación fue llevada a cabo como resultado de un incidente ocurrido el 13 de agosto de 1996.
A saber, mediante la investigación se alegó que el apelante no acudió al auxilio de un paciente con dificultad respiratoria, quien falleciera más adelante, en violación al reglamento de la agencia concernida. La agencia apelada suspendió de empleo y sueldo por treinta días al apelante debido a dicho incidente.
*580 Como consecuencia de lo anterior, el 29 de abril de 1999, la parte apelante instó ante el TPI la acción que nos ocupa. En la misma, se alegó que mientras Ramos Zavala trabajaba en el Cuerpo de Emergencias Médicas Estatal, sufrió daños debido a la suspensión de referencia, un supuesto ambiente hostil y hostigamiento laboral. A su vez, el apelante advirtió violación a sus derechos constitucionales al responsabilizar al patrono apelado por haber afectado su vida al punto de requerir tratamiento psiquiátrico y sufrir pérdida de ingresos.
Entre la prueba documental estipulada, en gran parte relacionada con las acciones disciplinarias de la autoridad nominadora, se resaltan a continuación las siguientes, según surgen de la sentencia apelada:

“1. Hoja de trámite, suspensión de empleo y sueldo.

2. Suspensión de empleo y sueldo.

3. Notificación de vista administrativa informal.

4. Comunicación sobre posible destitución.

5. Suspensión de empleo y sueldo.

6. Reprimenda.

7. Solicitud de horario para estudios.

8. Violación al derecho a la educación 5/10/98.

9. Violación al derecho a la investigación.

10. Reprimenda escrita.

11. Solicitud de vista administrativa.

12. Citación a vista administrativa.

13. Amonestación escrita.

14. Reubicación.. -

15. Comunicación sobre suspensión de empleo y sueldo.

16. Reglamento empleados de carrera.

17. Reglamento de normas y procedimientos.

18. Reglamento de normas y procedimientos (Bomberos).

19. Carta de renuncia. ’’

La prueba de la paite apelante constituyó de los testimonios bajo juramento de Ramos Zavala, la señora Méndez Mojica y del doctor Rodríguez Cay. La apelante, señora Mojica, no compareció al juicio. Por la parte apelada testificó el señor Héctor Hiraldo Matías, técnico de emergencias y oficial de investigación, y la señora *581 Ivette Rivera Fernández, técnico de personal en el Cuerpo de Emergencias Médicas.
De los testimonios se pudo constatar que la parte apelante trabajó catorce años para la agencia apelada y nunca fue despedido de su empleo, contrario a lo alegado en la acción civil instada. Ramos Zavala no sólo concluyó, mientras trabajaba, sus estudios de Bachillerato, sino que además estudió una Maestría en Administración Pública la que terminó en el año 1999.
A base de la prueba auscultada, el TPI advirtió como parte de sus determinaciones de hechos que los empleados del Cuerpo de Emergencias Médicas afectados por una determinación de la agencia, que entienden les infringen sus derechos cobijados por la Ley del Servicio Público, se les reconoce el derecho de una vista administrativa informal. De ser desfavorable para dicha parte la determinación emitida por la parte aquí apelada, tiene ante su consideración el derecho de recurrir ante el foro administrativo adjudicativo especializado, la entonces Junta de Apelaciones del Sistema de Administración de Personal, para vindicar su alegada infracción de sus derechos. En este caso, Ramos Zavala optó por no seguir ese trámite administrativo.
Así las cosas, el 8 de mayo de 2003, el Sr. Néstor Ramos Zavala renunció a su trabajo y acudió al Fondo del Seguro del Estado reclamando tratamiento por “accidente ocupacional” descrito como “dolor de cabeza y ansiedad, nerviosismo e hipertensión El 11 de diciembre de 2002, el Fondo del Seguro del Estado emitió la Decisión del Administrador que lee como sigue:

“Se trata, en este caso, de Néstor Ramos Zavala, quien trabaja para el patrono Cuerpo de Emergencias Médicas Estatal, en calidad de Técnico II Emergencias Médicas, en Caguas, Puerto Rico.

En el presente caso, fue radicado un informe patronal, el 20 de julio de 2001, donde describe como accidente ocupacional lo siguiente: Paciente alega dolor de cabeza y ansiedad, nervios e hipertensión (170/110)".

Fue evaluado y tratado por los médicos del Asegurador. El Psiquiatra diagnosticó una condición emocional identificada en las Guías Médicas adoptadas por la Corporación del Fondo del Seguro del Estado, bajo el Código 75.027, no relacionada. Concluyó el mencionado especialista, en su informe médico especial de fecha 10/8/2001, que la condición emocional no está relacionada, por entender que no ocurrió situación laboral alguna capaz de producir este cuadro.
[•..]”•
A base de las anteriores determinaciones de hechos, el TPI concluyó que las actuaciones del Estado estuvieron enmarcadas dentro de la ley y la reglamentación de personal aplicable y que no medió negligencia de parte de los funcionarios que aplicaron las sanciones disciplinarias. En su consecuencia desestimó la demandada.
Inconformes con este curso decisorio, la parte apelante acudió ante nos reclamando como único error cometido por el foro apelado el siguiente:

“Erró el Honorable Tribunal de Instancia y cometió un error manifiesto en la apreciación de la prueba que tuvo ante sí al declarar sin lugar la demanda. ”

Al evaluar el expediente ante nuestra consideración, con particular énfasis en la exposición narrativa de la prueba que se presentara, es de rigor concluir que actuó correctamente el TPI al tomar la decisión en controversia. Exponemos el por qué a continuación.
*582 II
A. La apreciación de la prueba y la adjudicación de credibilidad testifical
Es norma claramente establecida por el Tribunal Supremo de Puerto Rico que en ausencia de error manifiesto, pasión, prejuicio o parcialidad no se intervendrá a nivel apelativo con las determinaciones de hechos y adjudicación de credibilidad hecha en instancia por el juzgador de los hechos. Trinidad García v. Chade, 2001 J.T.S. 10; Colón y otros v. K-Mart y otros, 2001 J.T.S. 98; Municipio de Ponce v. Autoridad de Carreteras, 2001 J.T.S. 3; Monllor Arzola v. Soc. Legal de Gananciales, 138 D.P.R. 600 (1995)
Más aún, dispone la Regla 43.2 de las de Procedimiento Civil de Puerto Rico, 32 L.P.R.A., Ap. III, en lo pertinente, que “[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el Tribunal Sentenciador para juzgar la credibilidad de los testigos”.
Un foro apelativo no puede descartar y sustituir por su propia apreciación, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. Argüello v. Argüello, supra. La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. íd.; Pueblo v. Bonilla Romero, 120 D.P.R. 92 (1987).
En esa misma línea de pensamiento, es el juez ante quien deponen los testigos quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, en fin, el comportamiento general mientras declaran, factores que van formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. Argüello v. Argüello, supra. “[L]a declaración de un testigo no contradicho sobre un hecho determinado, debe merecer crédito, a no ser que su versión sea físicamente imposible, inverosímil o que por su conducta en la silla testifical se haga indigno de crédito". Miranda Soto v. Mena Eró, 109 D.P.R. 473 (1980) (Citas omitidas).
Aunque de ordinario el foro apelativo no interviene con la apreciación de la prueba que hacen los foros judiciales de instancia, sí lo hace cuando un balance racional, justiciero y jurídico de la totalidad de la prueba y de los documentos que obran en autos lleva a conclusiones distintas a las del tribunal de instancia. Negrón Rivera y Bonilla, Ex Parte, 120 D.P.R. 61 (1987).
Un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985); Pérez v. Hosp. La Concepción, 115 D.P.R. 721, 728 (1984). No obstante, está claro que el arbitrio del juzgador de hechos es respetable, mas no absoluto. Por eso, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. Véase, Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987).
Con relación a la contención esbozada por la parte apelante, a saber, que el TPI no debió resolver que las actuaciones del Estado estaban enmarcadas dentro de la Ley y la reglamentación de personal aplicable, al haber mediado, pues, negligencia por parte de los funcionarios que aplicaron las sanciones disciplinarias y haciendo caso omiso a la prueba que, según dicha parte, tiende a demostrar el daño alegado, entendemos categóricamente que no le asiste la razón. Veamos.
*583 B. Acción de Daños y Perjuicios y Ley de Pleitos Contra el Estado
En el caso que nos ocupa, se trata de una reclamación por las alegadas actuaciones negligentes de funcionarios del Estado al crear y no corregir un supuesto ambiente hostil permeante en su lugar de trabajo, razón por la cual reclamó daños y perjuicios, de conformidad a lo establecido en el Art. 1803 del Código Civil, 31 L.P. R.A. 5142. Dicho precepto, al igual que su contraparte, el Art. 1802 del Código Civil, 31 L.P.R.A. 5141, incorpora la responsabilidad basada en culpa. Se trata, según ha observado el Tribunal Supremo de Puerto Rico, de un concepto amplio que incluye actuaciones negligentes e intencionales; tan abarcador como pueda serlo la propia conducta humana que pretende reglamentar. Pérez Vda. Muñiz v. Criado, 151 D.P.R. 335 (2000); Toro Aponte v. Estado Libre Asociado, 142 D.P.R. 464 (1997); Reyes v. Sucn. Sánchez Soto, 98 D.P.R. 305, 310 (1970).
La Ley Núm. 104 de 29 de junio de 1955, según enmendada, conocida como Ley de Reclamaciones y Demandas Contra el Estado, 32 L.P.R.A. 3077 et seq., constituye una renuncia amplia, pero condicionada por parte del Estado a la protección que le brinda la inmunidad del soberano. El Art. 2 de la Ley 104, 32 L.P.R.A. 3077, autoriza, entre otras, la presentación contra el Estado de acciones de daños y perjuicios a la persona o a la propiedad “causados por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia". García v. Estado Libre Asociado, 146 D.P.R. 725 (1998).
El Tribunal Supremo de Puerto Rico ha aclarado que para que un demandante pueda prevalecer en un pleito por daños y perjuicios contra el Estado por actuaciones de un funcionario, debe establecer: (1) que la persona que le causó el daño era agente, funcionario o empleado del Estado y que estaba actuando en su capacidad oficial al momento de causar el daño; (2) que el funcionario, agente o empleado, actuó dentro del marco de su función; (3) que la actuación del empleado del Estado fue negligente y no intencional, y (4) que existe una relación causal entre la conducta culposa y el daño producido. Leyva et al. v. Aristud et al., 132 D.P.R. 489, 510 (1993). Véase además, Art. 6(d) de la Ley Núm. 104, supra, 32 L.P.R.A. 3801(d).
El demandante tiene la opción de demandar directamente al empleado, al Estado o, en forma alternativa, a las dos partes, García v. Estado Libre Asociado, supra; Vázquez Negrón v. E.L.A., 113 D.P.R. 148 (1982). La inmunidad que pueda asistir al empleado particular respecto a la actuación que da lugar a la demanda no beneficia al Estado. Romero Arroyo v. E.L.A., 127 D.P.R. 724, 746 (1991).
No obstante lo anterior, el Art. 6 de la Ley Núm. 104, supra, aclara que no están autorizadas las acciones de daños y perjuicios contra el Estado por acciones u omisiones de un funcionario cuando, inter alia, dichas actuaciones son “constitutivfas] de acometimiento, agresión u otro delito contra la persona, ...”. 32 L.P.R.A. 3081. Véase, Baéz Vega v. Estado Libre Asociado, 87 D.P.R. 67 (1963).
C. El derecho a la intimidad y el hostigamiento laboral
En Arroyo v. Rattan Specialties, Inc., 117 D.P.R. 35 (1986), el Tribunal Supremo analizó, dentro del contexto de la relación obrero-patronal, el ámbito y el contorno de los derechos a la intimidad y a la dignidad del ser humano, y a estar protegido contra riesgos a la integridad personal en el trabajo, consagrados en el Art. II, Secs. 1, 8 y 16 de la Constitución del Estado Libre Asociado, 1 L.P.R.A. Art. II, Secs. 1, 8 y 16. En ese caso, se resolvió que el derecho a la intimidad opera exproprio vigore y puede hacerse valer aun entre personas privadas. Id., pág. 64.
En Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178 (1998), el Tribunal Supremo discutió ampliamente el derecho a la intimidad y reiteró los intereses protegidos por ese derecho, incluyendo aquéllos en el contexto de la relación obrero-patronal. Quedó allí expreso lo siguiente:

*584
“Los derechos a la intimidad y ala protección contra ataques abusivos a la honra y ala reputación personal consagrados en las Secs. 1 y 8 de nuestra Carta de Derechos, supra, tienen especial preeminencia según nuestro esquema constitucional.

Al describir estos derechos en el esquema constitucional estadounidense, el Tribunal Supremo de Estados Unidos ha expresado que los intereses protegidos por el derecho a la intimidad son esencialmente dos (2): “[u] no es el interés individual de evitar la divulgación de asuntos personales y el otro es el interés de poder tomar ciertas decisiones importantes con independencia”. (Escolios omitidos y traducción nuestra.) Whalen v. Roe, 429 U.S. 589, 599-600 (1977).

En nuestra jurisdicción hemos afirmado que el derecho a la vida privada y familiar “impone a toda persona el deber de no inmiscuirse en la vida privada o familiar de los demás seres humanos”. (Énfasis suplido.) Colón v. Romero Barceló, 112 D.P.R. 573, 576 (1982). Por su importancia, hemos reconocido que opera ex proprio vigore, sin necesidad de que concurra el requisito de acción estatal para invocarlo frente a personas particulares. ...

Un examen de nuestros previos pronunciamientos, así como de la jurisprudencia federal, revela que este derecho se lesiona, entre otras instancias, cuando se limita la facultad de un individuo de tomar decisiones personales, familiares o íntimas, Pueblo v. Duarte Mendoza, 109 D.P.R. 596 (1980); Roe v. Wade, 410 U.S. 113 (1973); cuando se requiere exponer públicamente la vida íntima de una pareja para poder divorciarse, Figueroa Ferrer v. E.L.A., 107 D.P.R. 250 (1978), o cuando se limita la facultad de la decisión de utilizar anticonceptivos, Griswold v. Connecticut, 381 U.S. 479 (1965); Eisenstadt v. Baird, 405 U.S. 438 (1972).

Asimismo, se lesionan los derechos a la intimidad y ala protección contra ataques abusivos a la honra y ala reputación personal cuando se viola la tranquilidad del hogar, Sucn. de Victoria v. Iglesia Pentecostal, 102 D.P. R. 20 (1974), y E.L.A. v. Hermandad de Empleados, 104 D.P.R. 436 (1975); cuando se hostiga a una persona mediante el uso del sistema telefónico, P.R. Tel. Co. v. Martínez, 114 D.P.R. 328 (1983), o cuando la constante presencia de una foto en los medios de comunicación representa una indebida intromisión en la vida familiar, Colón v. Romero Rarceló, supra.

Por tratarse de un derecho invocable frente a personas privadas, el patrono está obligado a no infringir la zona de autonomía individual de sus empleados, que protege el derecho a la intimidad. ” Supra, págs. 201-203.
En cuanto al derecho a la intimidad en el contexto de la relación obrero-patronal, el Tribunal Supremo señaló lo siguiente:

“Un mero sentimiento de incomodidad en el empleo por alguna situación laboral no configura una violación del derecho a la intimidad imputable al patrono. ...

Meros traslados de posiciones o el envío de memorandos, en los cuales se evalúe la labor realizada, no configuran por sí solos una violación a la protección constitucional a la intimidad. Es preciso que tales traslados o comunicaciones internas sean arbitrarias, irrazonables y caprichosas; que generen una atmósfera hostil para el obrero que impida del todo su sana estadía en el trabajo; que sean originadas por un motivo ajeno al legítimo interés de salvaguardar el efectivo desempeño en el empleo, o que contengan expresiones claramente difamatorias o lesivas. En esta determinación, los tribunales de instancia deben examinar la prueba que al respecto presente un empleado para determinar si queda configurada la violación constitucional alegada o si las actuaciones señaladas como tales por el obrero constituyen meramente gestiones administrativas legítimas. ”

*585 Supra, págs. 207 y 209.
Esbozada la doctrina aplicable, pasemos a conformar la misma con los hechos presentados.
III
En el caso de autos, no estamos ante alguna de las situaciones mencionadas anteriormente que son consideradas como nocivas al derecho a la intimidad, aptas para causar aquel daño que amerita un deber de responder por él. Al examinar las aseveraciones aducidas en la demanda para sustentar su causa de acción por violación al derecho a la intimidad, el apelante hizo referencia a que sufrió los vejámenes, la humillación y persecución por parte del patrono consistente en querellas, sanciones e investigaciones en su contra.
Asimismo, la parte apelante adujo que se le violó su derecho a la intimidad por el hecho que las investigaciones llevadas a cabo por el patrono, en conjunción con las consecuentes suspensiones lo mantuvieron en un estado de ansiedad y desasosiego emocional que desestabilizó hasta su vida personal y entorno familiar. A su vez, acotó que dicho ambiente hostil lo forzó a renunciar a su trabajo al no poder soportar la supuesta persecución ocasionada por el patrono apelado.
El TPI descansó acertadamente su criterio juzgador sobre la prueba testifical y documental apreciada y sentenció que las actuaciones imputadas se ajustaron al ordenamiento jurídico antes discutido y de conformidad con el debido proceso de ley. Compartimos el parecer de la ilustre sala de instancia en cuanto a que no sólo al señor Ramos Zavala se le notificó oportunamente sobre los derechos que le amparaban, sino que se le ofreció la oportunidad de ser escuchado y de recurrir de la determinación de la agencia al foro adecuado.
Tomando en consideración las circunstancias particulares de Ramos Zavala y los fundamentos esgrimidos por el TPI, no detectamos que el foro apelado cometiera error al apreciar la prueba o se equivocara en la aplicación del derecho.
IV
En mérito a lo expuesto, confirmamos la sentencia dictada por el TPI.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Leda. Laura M. Vél'ez Véléz
Secretaria del Tribunal de Apelaciones