EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| María de los Ángeles Torres Pagán y Pedro Irizarry Morales<br><br>    Recurridos<br><br>                    v.<br><br>Municipio Autónomo de Ponce, et al.<br>    Peticionarios<br><br>\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*<br>María de los Ángeles Torres<br><br>Pagán y Pedro Irizarry Morales<br><br>    Peticionarios<br><br>                    v.<br><br>Municipio Autónomo de Ponce,<br>Francisco Zayas Seijo<br><br>    Recurridos | Certiorari<br><br>2014 TSPR 108<br><br>191 DPR \_\_\_\_ |

Número del Caso: CC-2012-133
          Cons. CC-2012-247

Fecha: 16 de septiembre de 2014

## CC-2012-133

Tribunal de Apelaciones:

    Región Judicial de Ponce

Abogados de la Parte Peticionaria:

    Lcdo. Reinaldo Maldonado Vélez
    Lcdo. Luis Omar Rodríguez López

Abogado de la Parte Recurrida:

    Lcdo. Carlos J. Rivera Ruiz

<u>**CC-2012-247**</u>

Tribunal de Apelaciones:

    Región Judicial de Ponce

Abogado de la Parte Peticionaria:

    Lcdo. Carlos J. Rivera Ruiz

Oficina del Procurador General:

    Luis R. Román Negrón
    Procurador General

    Lcda. Jannelle M. Laforet Matos
    Procuradora General Auxiliar

Materia: Jurisdicción de los tribunales para atender, en primera instancia, reclamaciones bajo el Head Start Act y la Ley de Derechos Civiles Federal.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

María de los Ángeles Torres
Pagán y Pedro Irizarry Morales
    Recurridos
          v.
Municipio Autónomo de Ponce, et al.    CC-2012-133    Certiorari
    Peticionarios
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
María de los Ángeles Torres      Cons. CC-2012-247
Pagán y Pedro Irizarry Morales
    Peticionarios
          v.
Municipio Autónomo de Ponce,
Francisco Zayas Seijo
    Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 16 de septiembre de 2014.

Este caso nos permite determinar cuál es el foro con jurisdicción para atender una causa de acción al amparo del estatuto federal conocido como Head Start Act, *infra*, entre otras disposiciones como la Ley de Derechos Civiles federal, *infra*, presentada por una empleada pública que trabaja como Directora del Programa Head Start en un municipio autónomo. En particular, si corresponde que dicha empleada presente su reclamo ante la

Comisión Apelativa del Servicio Público (CASP)[1] o puede acudir directamente al Tribunal de Primera Instancia.

Analizados los contornos del presente recurso, concluimos que erró el Tribunal de Apelaciones al confirmar -aunque por distintos fundamentos- la decisión del foro de instancia de desestimar la demanda presentada por la Sra. María de los Ángeles Torres Pagán (señora Torres Pagán) y su esposo, el Sr. Pedro Irizarry Morales. En particular, el tribunal apelativo intermedio concluyó que el foro con jurisdicción para atender el caso es CASP y no el tribunal de instancia, por lo que ordenó al Municipio Autónomo de Ponce (Municipio) que notificara nuevamente la carta de cesantía a la señora Torres Pagán, esta vez con información sobre dónde presentar la apelación administrativa (en referencia a CASP) y el término dispuesto para ello.

Por su parte, el foro de instancia había declarado con lugar las mociones de sentencia sumaria presentadas por las partes querelladas y, por consiguiente, desestimó la demanda. En consecuencia, revocamos la determinación del Tribunal de Apelaciones y devolvemos el caso al tribunal de instancia para la continuación de los procedimientos conforme a lo aquí resuelto.

---

[1] Este organismo se creó en virtud del Plan de Reorganización Núm. 2 de 26 de julio de 2010, ello para fusionar la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH) y la Comisión de Relaciones del Trabajo del Servicio Público (CRTSP).

**I**

En el recurso CC-2012-0133, el Municipio comparece como peticionario, mientras la parte recurrida se compone por la señora Torres Pagán y su esposo. Por otro lado, en el recurso CC-2012-0247 comparecen como parte peticionaria la señora Torres Pagán y su esposo, mientras que los recurridos son el Municipio y el exalcalde de Ponce, Francisco Zayas Seijo (exalcalde Zayas Seijo). Veamos, pues, el trasfondo fáctico del presente caso consolidado.

Según surge del expediente, la señora Torres Pagán trabajó de forma ininterrumpida como Directora del Programa Head Start & Early Head Start en el Municipio desde el 9 de enero de 1989 hasta el 31 de julio de 2006 cuando fue despedida. Así, el 21 de junio de 2007 la señora Torres Pagán y su esposo presentaron una demanda contra el Municipio y el exalcalde Zayas Seijo en el tribunal de instancia.[2] Allí plantearon despido injustificado en virtud de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada;[3] discrimen por razón de afiliación política al amparo de la Ley Núm. 100 de 30 de junio de 1959, según enmendada;[4] violación a la Ley de Derechos Civiles federal[5] y la Ley de Derechos

---

[2] El exalcalde Francisco Zayas Seijo fue demandando como Alcalde del Municipio Autónomo de Ponce (Municipio) y en su carácter personal.

[3] 29 LPRA secs. 185a-185m.

[4] 29 LPRA secs. 146-151.

[5] 42 USCA sec. 1983.

Civiles de Puerto Rico; violación a la Constitución de Puerto Rico; daños y perjuicios; y violación al Head Start Act.[6]

En su demanda, los codemandantes expusieron que la señora Torres Pagán era una empleada municipal que ocupaba un puesto de carrera y cuya retribución económica era pagada con fondos federales; que "fue despedida ilegal y fulminantemente, sin otorgarle ningún proceso administrativo y en violación al debido proceso de ley, la Constitución de Puerto Rico y las leyes aquí citadas".[7] Alegaron que no existía motivo racional para el despido y que la razón para esa acción fue que la señora Torres Pagán estaba identificada políticamente con el fenecido exalcalde Rafael "Churumba" Cordero Santiago (exalcalde Cordero Santiago) y su administración municipal. Asimismo, añadieron que desde que el exalcalde Zayas Seijo llegó a la administración municipal se comenzó a desplazar, degradar, mover y despedir personal relacionado con la administración del exalcalde Cordero Santiago; que la parte demandada actuó de forma discriminatoria al despedir a la señora Torres Pagán y ubicar en su puesto a una persona identificada con la nueva administración municipal.

Además, los codemandantes adujeron que el desempeño profesional de la señora Torres Pagán fue

---

[6] En particular, se menciona la sección 9851 del Head Start Act, 42 USCA sec. 9851.

[7] Querella, Apéndice de la Petición de *certiorari* en el recurso CC-2012-0133, pág. 1.

excelente durante los 17 años dirigiendo el Programa Head Start en el Municipio y que el exalcalde Zayas Seijo erró al despedirla "a pesar de que su puesto es permanente y está regulado por el Head Start Act, donde toda decisión para despedir al Director del Programa de Head Start tiene que ser tomada en conjunto por la Junta de Gobierno y el Consejo de Política Normativa (conocido por Consejo de Padres), lo cual en este caso no se hizo".[8] (Énfasis omitido). Según alegaron, conforme al Head Start Act, el puesto de Director del Programa "no es uno de confianza y no debe estar sujeto a cambios en base (sic) a los vaivenes políticos que ocurran en los municipios ni estados de Estados Unidos y sus territorios";[9] que era empleada pública y tenía un interés propietario sobre la continuación en el cargo.

En la alternativa, indicaron que en caso de que el puesto de Director del Programa de Head Start en el Municipio fuera de confianza, entonces esa práctica de nombrar puestos de confianza pagados con fondos federales es contraria a la reglamentación de Head Start. Así pues, los codemandantes expresaron que la señora Torres Pagán sufrió daños como consecuencia de la actuación ilegal y discriminatoria del exalcalde Zayas Seijo, por lo que solicitaron remedios al amparo de la Ley Núm. 80, *supra*, y la Ley Núm. 100, *supra*, así como

---

[8] Querella, Apéndice de la Petición de *certiorari* en el recurso CC-2012-0133, pág. 2.

[9] Íd., pág. 3.

los ingresos dejados de devengar, salarios futuros y beneficios marginales para la señora Torres Pagán, y una indemnización por angustias mentales para su esposo, el señor Irizarry Morales.[10]

El 6 de agosto de 2007, el Municipio y el exalcalde Zayas Seijo -en su carácter oficial- contestaron la demanda. En particular, indicaron que la posición de Director del Programa de Head Start es un puesto de confianza del Municipio y que la señora Torres Pagán fue removida del mismo debido al manejo deficiente de los centros Head Start en el Municipio (lo que motivó señalamientos de deficiencias por parte de las agencias relacionadas con el Programa Head Start) y el patrón de inacción o insubordinación a las órdenes del entonces alcalde. Expresaron, además, que el Consejo de Política Normativa dio su consentimiento para despedir a la señora Torres Pagán. Como defensas afirmativas, esbozaron que el tribunal de instancia no tenía jurisdicción sobre la materia porque el ente para adjudicar la reclamación era CASARH (ahora CASP), no se agotaron los remedios administrativos, el Municipio no estaba sujeto al cumplimiento de la Ley Núm. 80, *supra*,

---

[10] En cuanto a la reclamación por la Ley Núm. 80, *supra*, los codemandantes solicitaron una indemnización de $78,384 y $19,596 por concepto de honorarios de abogado. En virtud de la Ley Núm. 100, *supra*, valoraron sus daños económicos y las angustias mentales en $100 mil, más la doble penalidad. Mientras, solicitaron $300 mil por concepto de ingresos dejados de devengar, salarios futuros y beneficios marginales, más la doble penalidad. Por último, reclamaron una indemnización de $50 mil por concepto de angustias mentales al esposo de la Sra. María de los Ángeles Torres Pagán (señora Torres Pagán).

ni la Ley Núm. 100, *supra*, la señora Torres Pagán no tenía derecho propietario sobre el empleo porque éste es de confianza y no hubo motivo discriminatorio para el despido de ésta.[11]  Por todo esto, solicitaron que se declarara "no ha lugar" la demanda.

Mientras, en octubre de 2007, el Estado compareció en representación del exalcalde Zayas Seijo y negó que hubiese despedido de forma ilegal a la señora Torres Pagán.  Además, indicó que el exalcalde Zayas Seijo gozaba de inmunidad en el ejercicio de sus funciones, y actuaba conforme a dichas funciones del empleo y no en su carácter personal.  Así pues, el Estado solicitó que se declarara "no ha lugar" la demanda.

Casi tres años más tarde, en agosto de 2010, tanto el Estado -por sí y en representación del exalcalde Zayas Seijo- como el Municipio presentaron sus respectivas mociones de sentencia sumaria.  Por un lado, el Estado solicitó una sentencia sumaria parcial a favor del exalcalde Zayas Seijo en su carácter personal, ello en cuanto a la reclamación de discrimen político y la acción de daños.  Entre otros asuntos, el Estado señaló que el cargo que ocupaba la señora Torres Pagán es un puesto de confianza, que no hubo discrimen político y que al exalcalde Zayas Seijo le cobijaba la inmunidad

---

[11] Es importante señalar que el Municipio negó que hubiese despedido a la señora Torres Pagán y mencionó que sólo utilizaba el concepto "despido" para fines de argumentación. Véase Contestación a Querella, Apéndice de la Petición de *certiorari* en el recurso CC-2012-0133, pág. 6.

condicionada de los funcionarios públicos. Por su parte, el Municipio pidió que se dictara sentencia sumaria a su favor y, en consecuencia, que se desestimara la demanda en su totalidad. En síntesis, el Municipio fundamentó su petición en que no existía una reclamación válida ni por la Ley Núm. 80, *supra*, ni por la Ley Núm. 100, *supra*, debido a que se trata de un municipio y el cargo en cuestión es de confianza, lo que conlleva la libre selección y libre remoción.

Así las cosas, en septiembre de 2010, la señora Torres Pagán y su esposo presentaron su oposición a ambas peticiones de sentencia sumaria. Allí señalaron, entre otros asuntos, que el status de la señora Torres Pagán en su cargo de Directora del Programa Head Start del Municipio era como "empleada de carrera regular" y que los puestos en el Programa Head Start son permanentes según los estatutos rectores del Programa federal de Head Start; proveyeron evidencia para sustentar ambas alegaciones. Además, expusieron que durante el primer año de gestión del exalcalde Zayas Seijo éste ejecutó un patrón de discrimen contra varios empleados del Municipio identificados con la administración del exalcalde Cordero Santiago; que la señora Torres Pagán pertenece al ala liberal del Partido Popular Democrático (PPD) y el exalcalde Zayas Seijo al lado conservador; que se configuró el discrimen por ideología política dentro de un mismo partido político

(discrimen intrapartido); que los demandados le negaron el debido proceso de ley a la señora Torres Pagán al ignorar los estatutos rectores del Programa federal de Head Start y que la defensa de inmunidad condicionada de funcionarios públicos no le aplicaba al exalcalde Zayas Seijo, pues ello suponía que éste actuara de buena fe. Por todo lo cual, argumentaron que sí existen controversias de hechos materiales, lo que imposibilitaba que se dictara una sentencia sumaria. El Municipio replicó al escrito de oposición de la señora Torres Pagán y su esposo.

Finalmente, el 28 de septiembre de 2010, el tribunal de instancia declaró "con lugar" las solicitudes de sentencia sumaria presentadas por el Estado y el Municipio, por lo que desestimó la demanda.[12] En particular, el foro de instancia aceptó que existe una controversia en torno a si el cargo es de carrera o de confianza, pero entendió que "dicha controversia no varía el dictamen ni el derecho aplicable".[13] Esto porque conforme a la contención de la señora Torres Pagán (que el puesto es de carrera), entonces ésta debía agotar los remedios administrativos correspondientes (acudir a CASP), mientras que según la contención del Estado y del Municipio (que el puesto es

---

[12] El archivo en autos de copia de la notificación fue el 4 de octubre de 2010.

[13] Sentencia del Tribunal de Primera Instancia, Apéndice de la Petición de *certiorari* en el recurso CC-2012-0133, pág. 553.

de confianza), entonces no había interés propietario que proteger y por ello no había que salvaguardarlo mediante intervención judicial. Así, el tribunal de instancia concluyó que no aplicaba ni la Ley Núm. 80, *supra*, ni la Ley Núm. 100, *supra*, pero mencionó la norma de que a los empleados de confianza les aplica la protección constitucional contra el discrimen político aunque sean puestos de libre selección y remoción.[14] No obstante, nada dispuso en cuanto a los planteamientos de violación al Head Start Act, la Ley de Derechos Civiles federal y estatal, y la Constitución de Puerto Rico.

Inconformes con el dictamen del foro de instancia, oportunamente la señora Torres Pagán y su esposo solicitaron reconsideración y determinaciones de hechos adicionales. A tales efectos, el tribunal de instancia ordenó a la parte demandada que se expresara únicamente en cuanto a las reclamaciones sobre discrimen político y la alegada violación al Head Start Act; el Estado así lo hizo mediante moción en cumplimiento de orden. Así las cosas, el 14 de diciembre de 2010, el foro de instancia denegó la reconsideración, pero nada dispuso sobre las determinaciones de hechos adicionales que le fueron solicitadas.[15]

---

[14] Sentencia del Tribunal de Primera Instancia, Apéndice de la Petición de *certiorari* en el recurso CC-2012-0133, pág. 557.

[15] El archivo en autos de copia de la notificación fue el 20 de diciembre de 2010.

Aún en desacuerdo con la decisión del tribunal de instancia, la señora Torres Pagán y su esposo recurrieron al Tribunal de Apelaciones en diciembre de 2010 y la parte demandada presentó su alegato en oposición a finales de enero de 2011. Así pues, el 29 de marzo de 2011 el mencionado foro apelativo desestimó el recurso por falta de jurisdicción por éste ser prematuro, ya que el tribunal de instancia nada había dispuesto en cuanto a las determinaciones de hechos adicionales.[16] Sobre esto, expresó que "[e]stando pendiente de adjudicación la moción de determinaciones de hechos y conclusiones de derecho adicionales, los términos para acudir a este Foro Apelativo no han comenzado a transcurrir. Por lo que el recurso resulta prematuro".[17]

Así las cosas, el 29 de junio de 2011, el tribunal de instancia declaró "no ha lugar" la solicitud de determinaciones de hechos adicionales. Inconformes, la señora Torres Pagán y su esposo acudieron nuevamente al Tribunal de Apelaciones el 8 de julio de 2011 para impugnar el dictamen del foro de instancia de declarar "con lugar" las peticiones de sentencia sumaria presentadas por el Estado y el Municipio. Tanto el Procurador General (en representación del exalcalde Zayas Seijo en su carácter personal) como el Municipio

---

[16] El archivo en autos de copia de la notificación fue el 1 de abril de 2011.

[17] Sentencia del Tribunal de Apelaciones, Apéndice de la Petición de *certiorari* en el recurso CC-2012-0133, pág. 608.

presentaron sus respectivos escritos de oposición en septiembre de 2011.

Finalmente, el 18 de noviembre de 2011, el Tribunal de Apelaciones confirmó -aunque por fundamentos distintos- al foro de instancia.[18]   En síntesis, determinó que el foro con jurisdicción para atender el caso era CASP y no el tribunal de instancia.  Asimismo, indicó que en la carta de cesantía se debió advertir a la señora Torres Pagán su derecho a acudir ante CASP para apelar la decisión del exalcalde Zayas Seijo.  Ante esto, ordenó al Municipio que notificara nuevamente la carta de cesantía a la señora Torres Pagán, pero que esta vez indicara dónde se debía presentar la apelación administrativa (en referencia a CASP) y el término dispuesto para ello.[19]

En desacuerdo con la decisión del Tribunal de Apelaciones, tanto la señora Torres Pagán y su esposo como el Municipio solicitaron reconsideración sin éxito. Así, ambas partes recurren ante esta Curia mediante sus respectivas peticiones de *certiorari*.  En el recurso CC-2012-0133, el Municipio nos señala que el foro apelativo intermedio cometió los dos errores siguientes:

---

[18] El archivo en autos de copia de la notificación fue el 29 de noviembre de 2011.

[19] En su sentencia, el Tribunal de Apelaciones señaló que si luego de que la señora Torres Pagán recibiera la notificación adecuada ésta optara por presentar su apelación ante CASP, entonces ese foro tendría que dilucidar si "es una empleada de carrera o de confianza y a base de dicha determinación otorgar los remedios que correspondan".  Sentencia del Tribunal de Apelaciones, Apéndice de la Petición de *certiorari* en el recurso CC-2012-0133, pág. 743.

(1) Erró el Tribunal de Apelaciones al haber ordenado al [Municipio] a notificar nuevamente la carta de cesantía a la querellante, ya que el ordenamiento jurídico vigente no concede derechos propietarios sobre puestos de confianza.

(2) Erró el Tribunal de Apelaciones al haber declarado no ha lugar la Moción en solicitud de Reconsideración presentada por el [Municipio], ya que el ordenamiento jurídico vigente no concede derechos propietarios sobre puestos de confianza.

Por su parte, en el recurso CC-2012-0247 la señora Torres Pagán y su esposo exponen que el Tribunal de Apelaciones incurrió en estos siete errores:

(1) Erró el Tribunal de Apelaciones al desestimar el caso por falta de jurisdicción, a pesar de reconocer expresamente en la Sentencia que: "las alegaciones de daños y perjuicios en contra de un funcionario deben ser presentadas en el Tribunal de Primera Instancia". Habiendo en el presente caso alegaciones en daños y perjuicios en contra del Sr. Francisco Zayas Seijo cuando era un funcionario público no procede entonces la desestimación de la demanda.

(2) Erró el Tribunal de Apelaciones al dejar de atender los argumentos presentados sobre la jurisdicción concurrente otorgada por el Tribunal Supremo de Estados Unidos a los tribunales federales y estatales para atender reclamos basados en leyes federales.

(3) Erró el Tribunal de Apelaciones al dejar de atender los argumentos presentados en cuanto a que las leyes federales tienen una mayor jerarquía que las leyes estatales.

(4) Erró el Tribunal de Apelaciones al desestimar la presente querella amparándose en la jurisdicción exclusiva de [CASP], obviando las leyes federales invocadas y lo establecido por el Tribunal Supremo de Estados Unidos y el Tribunal Supremo de Puerto Rico en cuanto a la jurisdicción de los tribunales federales y estatales sobre reclamos basados en leyes federales.

(5) Erró el Tribunal de Apelaciones al dejar de considerar lo resuelto en Carmen Lugo Ríos v. Municipio de Vega Baja, 2010 WL 3210694, en cuanto a que el puesto de la apelante está contemplado dentro del Head Start Act, y que la

**discusión en torno al puesto debe ser atendida en los tribunales.**

**(6) Erró el Tribunal de Apelaciones al desestimar la querella por falta de jurisdicción y preterición del trámite administrativo cuando el ELA y el [Municipio] se sometieron voluntariamente a la jurisdicción del Tribunal y nunca solicitaron que se trasladara el caso ante el ente administrativo, que se paralizara el caso ni alegaron falta de jurisdicción, máxime cuando el propio Tribunal de Instancia señaló fecha para la celebración del juicio, luego de tres años de litigio.**

**(7) Erró el Tribunal de Apelaciones al disponer que a la peticionaria no le aplica la Ley Núm. 80 ni la Ley Núm. 100, cuando de la Sentencia no surge disposición legal alguna que contradiga lo resuelto en García Burgos v. ELA, 170 DPR 315 (2007), que dispuso que la Ley Núm. 80 le aplica a empleados gerenciales en las instrumentalidades del gobierno, y en este caso, la peticionaria es una empleada gerencial.** (Énfasis omitido).

El 30 de marzo de 2012 expedimos el recurso CC-2012-0133 y lo consolidamos con el recurso CC-2012-0247 el 29 de junio de 2012; quedó sometido en los méritos el 26 de diciembre de 2012. Con el beneficio de las comparecencias de las partes, procedemos a resolver.

**II**

A. La Regla 36 de Procedimiento Civil

El objetivo principal del mecanismo de sentencia sumaria es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales y, en consecuencia, no ameritan la celebración de una vista

evidenciaria o un juicio en su fondo, por lo que sólo resta aplicar el derecho.[20]

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, es la que provee para que pueda dictarse una sentencia sumaria. Esta regla permite que cualquier parte en el litigio pueda solicitar al tribunal que se emita sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación.[21] Para esto, el solicitante deberá presentar una moción basada en declaraciones juradas o evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes.[22] Esto es, que el solicitante deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre ningún componente de la causa de acción.[23]

Por su parte, quien se opone a que el tribunal resuelva el caso por la vía sumaria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligado a contestar en forma detallada y específica, como lo hiciera la parte solicitante.[24] Es decir, la parte opositora a que

---

[20] Nieves Díaz v. González Massas, 178 DPR 820, 847 (2010). Véanse, también: Reyes Sánchez v. Eaton Electrical, 189 DPR 586, 594-595 (2013), 2013 TSPR 108; SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 430 (2013), 2013 TSPR 95.

[21] Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V.

[22] Íd.

[23] Véase Mun. de Añasco v. ASES et al., 188 DPR 307, 326 (2013).

[24] Regla 36.3(c) de Procedimiento Civil, 32 LPRA Ap. V.

se dicte sentencia sumaria no puede cruzarse de brazos y descansar en sus alegaciones, sino que le corresponde refutar los hechos materiales que están en disputa, ello presentando evidencia sustancial.[25] No obstante, si la parte opositora no presenta evidencia que rebata aquella presentada por la parte solicitante, ello no necesariamente implica que procede emitir sentencia sumaria de manera automática.[26]

Cuando se presenten la solicitud de sentencia sumaria y su oposición, el tribunal de instancia deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal, y (2) determinar si la parte opositora controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos.[27]

En varias ocasiones hemos expresado en qué circunstancias no se dictará una sentencia sumaria, siendo éstas cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho

---

[25] Pepsi-Cola v. Mun. Cidra et al., 186 DPR 713, 756 (2012); S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 168 (2011); Córdova Dexter v. Sucn. Ferraiuoli, 182 DPR 541, 556 (2011).

[26] Mun. de Añasco v. ASES et al., supra, pág. 327; Córdova Dexter v. Sucn. Ferraiuoli, 182 DPR 541, 556 (2011).

[27] S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011); Mgmt. Adm. Servs. Corp. v. E.L.A., 152 DPR 599, 611 (2000).

material y esencial, o (4) como cuestión de derecho no procede.[28]

Así pues, queda claro que la sentencia sumaria solo debe dictarse en casos claros, esto es cuando el foro de instancia tenga ante sí la verdad sobre todos los hechos pertinentes.[29] Claro está, es importante recordar que el principio rector que debe guiar la mente del juzgador sobre si procede o no dictar la sentencia sumaria es el sabio discernimiento, pues si dicho mecanismo procesal se utiliza de forma errónea entonces se puede privar a un litigante de su "día en corte", principio fundamental del debido proceso de ley.[30]

B. El Programa Head Start

El programa Head Start comenzó en 1965 en Estados Unidos durante el gobierno del Presidente Lyndon B. Johnson. Esta iniciativa fue parte del programa de gobierno conocido como "Guerra contra la pobreza", el cual se enfocaba en extender beneficios a personas que por distintas razones vivían en la marginación. Como parte del mencionado programa, se realizaron grandes esfuerzos por mejorar la calidad de vida de los

---

[28] Pepsi-Cola v. Mun. Cidra et al., supra, pág. 757; S.L.G. Szendrey-Ramos v. Consejo Titulares, supra, pág. 167; Vera v. Dr. Bravo, 161 DPR 308, 333-334 (2004).

[29] Corp. Presiding Bishop CJC of LDS v. Purcell, 117 DPR 714, 721 (1986).

[30] Mun. de Añasco v. ASES et al., supra, pág. 327.

individuos que vivían en extrema pobreza, en particular los niños.[31]

En Puerto Rico, el programa Head Start inició en el verano de 1965 en virtud del 45 CFR Part 34. El propósito fundamental del programa es promover el desarrollo integral de los niños pertenecientes a familias de bajos ingresos económicos. Para cumplir con dicho propósito, el programa ofrece servicios para mejorar el desarrollo social y cognoscitivo de los niños, esto a través de servicios -para ellos y sus familias- de salud, educación, nutrición, servicios sociales, entre otros.[32] En la Isla, la Administración para el Cuidado y Desarrollo Integral de la Niñez (ACUDEN) es uno de los componentes programáticos y operacionales del Departamento de la Familia, y es la encargada de administrar los fondos del Programa Head Start/Early Head Start y el Programa Child Care conforme dispone la Ley 179-2003.[33]

Este programa está regulado por el Head Start Act, 42 USCA secs. 9831-9852c, y el Code of Federal Regulations, 45 CFR secs. 1301-1311. En particular, los estándares de rendimiento del programa se rigen por lo dispuesto en 45 CFR secs. 1304.1-1304.61. El Head Start

---

[31] Véase http://www.acuden.pr.gov/ (última visita, 15 de septiembre de 2014).

[32] Véase 42 USCA sec. 9831. Además, refiérase a la Exposición de Motivos de la Ley Núm. 236-2002.

[33] Véase http://www.acuden.pr.gov/ (última visita, 15 de septiembre de 2014).

Act aplica a Puerto Rico, ya que para fines de dicho estatuto la definición de "estado" comprende al Estado Libre Asociado de Puerto Rico, entre otros territorios.[34]

C. La jurisdicción de la Comisión Apelativa del Servicio Público (CASP)

La Ley de Personal del Servicio Público, Ley Núm. 5 de 14 de octubre de 1975, 3 LPRA ant. sec. 1301 *et seq*. (derogada), estableció la Junta de Apelaciones del Sistema de Administración de Personal (JASAP). Ese estatuto fue derogado por la Ley para la Administración de los Recursos Humanos en el Servicio Público, Ley Núm. 184-2004, 3 LPRA secs. 1461-1468p, la cual creó la Comisión Apelativa del Sistema de Administración de Recursos Humanos (CASARH) para sustituir a JASAP. A ese organismo apelativo (CASARH) se le concedió jurisdicción apelativa en las reclamaciones de los empleados públicos no organizados sindicalmente, las cuales se relacionen al principio de mérito, entiéndase: clasificación de puestos, reclutamiento y selección, ascensos, traslados y descensos, adiestramiento, y retención.[35]

Con el Plan de Reorganización Núm. 2 de 2010, aprobado el 26 de julio de 2010, 3 LPRA Ap. XIII, se estableció la Comisión Apelativa para el Servicio

---

[34] 42 USCA sec. 9832(25).

[35] 3 LPRA sec. 1462.

Público (CASP).[36]   Este organismo posee jurisdicción apelativa para atender asuntos obrero-patronales y del principio de mérito.   En lo pertinente, el Art. 12 del mencionado Plan de Reorganización dispone lo siguiente:

> La Comisión tendrá jurisdicción exclusiva sobre las apelaciones surgidas como consecuencia de acciones o decisiones de los Administradores Individuales y los municipios en los casos y por las personas que se enumeran a continuación:

> (a) cuando un empleado, dentro del Sistema de Administración de los Recursos Humanos, no cubierto por la Ley Núm. 45 de 25 de febrero de 1998, según enmendada, conocida como la "Ley de Relaciones del Trabajo del Servicio Público", alegue que una acción o decisión le afecta o viola cualquier derecho que se le conceda en virtud de las disposiciones de la Ley Núm. 184 de 3 de agosto de 2004, según enmendada, la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como la "Ley de Municipios Autónomos", los reglamentos que se aprueben para instrumentar dichas leyes, o de los reglamentos adoptados por los Administradores Individuales para dar cumplimiento a la legislación y normativa aplicable.

D. La jurisdicción sobre causas de acción al amparo de estatutos federales

Los tribunales estatales pueden ejercer jurisdicción concurrente sobre pleitos que se fundamenten en la Constitución, las leyes y los tratados de Estados Unidos, a excepción de cuando tal jurisdicción es, expresa o implícitamente, exclusiva de las cortes federales.[37]   Así lo ha reconocido la Corte Suprema de Estados Unidos al determinar que los

---

[36] Con este Plan de Reorganización se derogó el Art. 13 de la Ley para la Administración de los Recursos Humanos en el Servicio Público, Ley Núm. 184-2004, 3 LPRA ant. secs. 1468-1468p.

[37] Colón Rivera et al. v. ELA, 189 DPR 1033, 1054 (2013), 2013 TSPR 152; Acevedo v. Srio. Servicios Sociales, 112 DPR 256, 259 (1982); SLG Semidey Vázquez v. ASIFAL, 177 DPR 657, 679 (2009).

tribunales estatales pueden asumir jurisdicción respecto a la materia de una causa de acción federal a menos que exista una ley del Congreso de Estados Unidos que disponga lo contrario o cuando exista una incompatibilidad entre el litigio federal y su adjudicación en las cortes estatales.[38] Según ha manifestado el Alto Foro federal, el hecho de "permitir a las cortes estatales que resuelvan las causas de acción federales facilita el proceso de hacer valer los derechos federales".[39]

Un ejemplo de esa jurisdicción concurrente sobre la materia de una causa de acción federal son los pleitos fundamentados en la Sec. 1983 de la Ley de Derechos Civiles federal, 42 USCA sec. 1983. En Acevedo v. Srio. Servicios Sociales, 112 DPR 256 (1982), expusimos que los tribunales estatales tenían jurisdicción para atender este tipo de casos, pues no se desprendía del texto de la ley ni de su historial legislativo que el Congreso de Estados Unidos tuviese la intención de conferir a las cortes federales la jurisdicción exclusiva sobre estos.[40]

---

[38] Leyva et al. v. Aristud et al., 132 DPR 489, 499 (1993), citando a Howlett v. Rose 496 US 356 (1990), Gulf Offshore Co. v. Mobil Oil Corp., 453 US 473, 477-478 (1981), Martínez v. California, 444 US 277, 283 n. 7 (1980) y Maine v. Thiboutot, 448 US 1, 3 n. 1 (1980).

[39] Leyva et al. v. Aristud et al., supra, pág. 500 n. 5.

[40] Véase, además, Colón Rivera et al. v. ELA, supra.

### III.

En sus recursos de *certiorari*, ambas partes formularon sus respectivos señalamientos de error en torno a la determinación del Tribunal de Apelaciones. No obstante, la controversia medular que debemos resolver se circunscribe a determinar cuál es el foro con jurisdicción para atender una causa de acción al amparo del estatuto federal conocido como Head Start Act, *supra*, entre otras disposiciones como la Ley de Derechos Civiles federal, *supra*, presentada por una empleada pública que trabaja como Directora del Programa Head Start en un municipio autónomo. En particular, si a esa empleada le correspondía presentar su reclamo ante CASP o podía acudir directamente al tribunal de instancia. Luego de examinar tanto los expedientes de los dos casos consolidados como los argumentos planteados por ambas partes, colegimos que el Tribunal de Apelaciones erró en su decisión de referir el caso a CASP.

Es importante resaltar que en el presente caso tanto el foro de instancia como el tribunal apelativo intermedio no se expresaron en cuanto a las causas de acción al amparo del Head Start Act, *supra*, y la Ley de Derechos Civiles federal, *supra*. La señora Torres Pagán y su esposo plantean que el Tribunal de Apelaciones erró al determinar que el foro con jurisdicción para atender su reclamo es CASP, esto amparándose en que éste es el

foro con jurisdicción exclusiva, obviando así las leyes federales invocadas y la jurisprudencia vigente en cuanto a la jurisdicción de los tribunales federales y estatales sobre reclamos basados en leyes federales. Les asiste la razón.

En primer lugar, como ha manifestado esta Curia, "[f]ue a los tribunales que la Asamblea Legislativa remitió la reivindicación de derechos fundamentales garantizados por la Constitución".[41] A tono con esas expresiones, el profesor Demetrio Fernández Quiñones ha enfatizado que "[l]a reivindicación de los derechos constitucionales corresponde y puede reclamarse en primera instancia en los tribunales de justicia, sin que tenga jurisdicción sobre ello el foro administrativo".[42]

En el presente caso, la señora Torres Pagán alega en su demanda –entre otros asuntos- violación a la Ley de Derechos Civiles federal, *supra*, y la estatal, por discrimen político en el empleo y violación al debido proceso de ley en relación con el Head Start Act.

En segundo lugar, es importante destacar la diferencia entre la resolución de los casos por los tribunales *vis a vis* por las agencias administrativas. Este Foro ha planteado que los tribunales de justicia son los llamados a resolver los casos y controversias

---

[41] *Pierson Muller I v. Feijoó*, 106 DPR 838, 852 (1978).

[42] D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Forum, 2013, pág. 630. Véase, además, *Colón Rivera et al. v. ELA*, supra.

que se presentan ante ellos,[43] así como a interpretar tanto la Constitución como la legislación vigente.[44] Por su parte, también hemos expresado que los procedimientos administrativos hacen posible a las partes y al juzgador obtener el beneficio de los más entendidos en las materias técnicas que se discuten (*expertise*).[45] En ese sentido señalamos que una agencia administrativa sólo puede realizar las funciones que se le han encomendado por legislación y aquellas que surgen de su actividad o encomienda principal.[46] Es decir, una agencia administrativa no puede asumir jurisdicción sobre situación alguna que no esté autorizada por ley; ni la necesidad ni la utilidad ni la conveniencia pueden reemplazar al estatuto en cuanto a fuente de poder de una agencia. Ante esto, cualquier duda respecto a la existencia de ese poder debe resolverse en contra de su ejercicio.[47]

En tercer lugar, conforme a lo que pautamos recientemente en Colón Rivera et al. v. ELA, 189 DPR 1033 (2013), 2013 TSPR 152, un empleado público que tenga una reclamación al amparo de la Sección 1983 de la Ley de Derechos Civiles federal, *supra*, por alegado

---

[43] Vélez Ruiz v. E.L.A, 111 DPR 752, 756 (1981).

[44] Hernández, Romero v. Pol. de P.R., 177 DPR 121, 137 (2009).
[45] Junta Dir. Cond. Montebello v. Fernández, 136 DPR 223, 233 (1994); Pérez Ríos v. Hull Dobbs, 107 DPR 834, 840 (1978).

[46] Amieiro González v. Pinnacle Real Estate, 173 DPR 363, 371 (2008).

[47] Raimundi v. Productora, 162 DPR 215, 225 (2004). Véase, además, Amieiro González v. Pinnacle Real Estate, supra, pág. 372.

discrimen político en el empleo, puede acudir directamente al foro de instancia a presentar su reclamación. Esto es, ante la realidad de que la señora Torres Pagán alegó discrimen político al amparo de la Ley de Derechos Civiles federal, *supra*, ésta podía —como en efecto lo hizo— presentar su reclamo ante el tribunal de instancia.

Por último, es preciso señalar que este caso lleva en nuestros tribunales desde hace casi siete años cuando se presentó la demanda el 21 de junio de 2007. Poco más de tres años después, en agosto de 2010, fue que el Estado y el Municipio presentaron sus respectivas mociones de sentencia sumaria. Ante esta realidad fáctica, avalar la determinación del Tribunal de Apelaciones de que el Municipio tendría que notificar nuevamente la carta de cesantía a la señora Torres Pagán indicándole que debe apelar su cesantía ante CASP y el término que tiene para ello sería claramente una actuación irrazonable que provocaría una mayor dilación en la tramitación del reclamo de la señora Torres Pagán y su esposo.

Concluimos que no procede devolver el caso a CASP, ya que el foro con jurisdicción para atender los reclamos de la señora Torres Pagán y su esposo es el tribunal de instancia, pues dicho foro es el más idóneo para dilucidar su reclamación. Así pues, erró el Tribunal de Apelaciones al confirmar la determinación

del foro de instancia de declarar "con lugar" las peticiones de sentencia sumaria presentadas por el Estado y el Municipio y, en consecuencia, desestimar la demanda. Esto bajo el fundamento de que el foro con jurisdicción para atender el reclamo era CASP y no el tribunal de instancia. De igual forma, erró el foro de instancia al declarar "con lugar" las solicitudes de sentencia sumaria cuando en realidad sí existe una controversia de hechos material que dilucidar en el pleito y así lo aceptó el propio foro primario en su determinación. En particular, expresó que sí podía existir una controversia en cuanto a la naturaleza del puesto que ocupaba la señora Torres Pagán, esto es si era de carrera o de confianza.[48]

Así las cosas, corresponderá que el tribunal de instancia evalúe la reclamación de la señora Torres Pagán y su esposo a la luz de lo aquí establecido.

IV.

Por todo lo anterior, revocamos la determinación del Tribunal de Apelaciones y devolvemos el caso al foro de instancia para la continuación de los procedimientos conforme a lo aquí resuelto.

Se dictará Sentencia de conformidad.


Erick V. Kolthoff Caraballo
Juez Asociado

---

[48] Véase Sentencia del Tribunal de Primera Instancia, Apéndice de la Petición de *certiorari* en el recurso CC-2012-0247, pág. 588.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


María de los Ángeles Torres
Pagán y Pedro Irizarry Morales
    Recurridos
           v.
Municipio Autónomo de Ponce, et al.    CC-2012-133     Certiorari
    Peticionarios
*******************************
María de los Ángeles Torres      Cons. CC-2012-247
Pagán y Pedro Irizarry Morales
    Peticionarios
           v.
Municipio Autónomo de Ponce,
Francisco Zayas Seijo
    Recurridos


SENTENCIA


San Juan, Puerto Rico, a 16 de septiembre de 2014.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, revocamos la determinación del Tribunal de Apelaciones y devolvemos el caso al foro de instancia para la continuación de los procedimientos conforme a lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina. La Jueza Presidenta señora Fiol Matta, la Juez Asociada señora Rodríguez Rodríguez y la Jueza Asociada Oronoz Rodríguez concurren con el resultado sin opinión escrita. El Juez Asociado señor Feliberti Cintrón está inhibido.


Camelia Montilla Alvarado
Secretaria del Tribunal Supremo, Interina